1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7                             FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9
CARRIE L. SMITH,                                    No. C-04-00558 SBA (EDL)
10
                Plaintiff,                           **ORDER DENYING WITHOUT**
11                                                   **PREJUDICE DEFENDANT'S MOTION**
                                                     **FOR DISCOVERY REFEREE;**
12    v.                                             **GRANTING DEFENDANT'S MOTION**
                                                     **TO COMPEL *IN CAMERA* REVIEW OF**
13  DIXIE SCHOOL DISTRICT,                           **PLAINTIFF'S JOURNAL; GRANTING IN**
                                                     **PART AND DEFERRING IN PART**
14                Defendant.                         **DEFENDANT'S MOTION FOR FEES**
    _____/                **AND COSTS**
15

16          In this employment discrimination case, Plaintiff, a physical education teacher at Miller

17  Creek School in the Dixie School District from August 2001 through June 2003, claims that she was

18  subjected to discrimination and was essentially forced to resign.  On March 10, 2005, Defendant

19  filed two discovery motions and a motion for fees and costs.  On May 6, 2005, these matters were

20  referred to this Court.  Because the motions are appropriate for decision without oral argument, the

21  Court vacated the May 24, 2005 hearing.

22  **Motion for Discovery Referee**

23          Defendant seeks an Order appointing a discovery referee or special master to monitor the

24  remainder of Plaintiff's deposition based on Plaintiff's counsel's behavior during Plaintiff's

25  depositions on November 15, 2004 and February 4, 2005.  Under limited circumstances, Federal

26  Rule of Civil Procedure 53 permits appointment of a special master to, *inter alia*, "address pretrial

27  and post-trial matters that cannot be addressed effectively and timely by an available district judge

28  or magistrate judge of the district."  See Fed. R. Civ. Proc. 53, Advisory Committee notes, 2003

    amendment (recommending that pretrial masters be appointed "only when the need is clear."); 9A

Wright & Miller, <u>Federal Practice & Procedure</u>, § 2601 at 405 (2005 Supp.).

In this case, the Court is deeply troubled by Plaintiff's counsel's extreme misconduct at the depositions.  In stark contravention of the Federal Rules of Civil Procedure and of basic professional standards, Plaintiff's counsel frequently interrupted the first deposition with inappropriate speaking objections, needless commentary and blatant witness coaching.  <u>See</u> Fed. R. Civ. Proc. 30(d)(1) ("Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner.").  The instances of Plaintiff's counsel's improper conduct are extensive; the following examples are merely a sample.

Plaintiff's counsel improperly interjected statements such as "If you know" on numerous occasions before Plaintiff could even answer pending questions.  <u>See, e.g.,</u> Nov. 15, 2004 Transcript at 22:8-10 (Q: "Did they hire you as a first-year probationary teacher or on some other status?" Ms. Andelin: "If you know." Witness: "First-year probationary."); 24:10-15 (Q: "The teacher training programs you described or mentioned a minute ago, did they have something to do with things you had to do to get your credential?" Ms. Andelin: "If you know." Witness: "Not necessarily.  They weren't directly related."); 26:16-20 (Q: "Were you hired to replace another teacher who had left, or were they expanding the PE department?" Ms. Andelin: "If you know."  Witness: "Hired to replace a teacher that moved to vice principal."); 66:1-5 (Q: "So you had an office inside the girls' locker room, and there were similar PE offices inside the boys' locker room?"  Ms. Andelin: "If you know," Witness: "Yes."); 105:8-16 (Q: "Do you recall any occasions when you did receive a radio communication in the morning from Scott or from Dylan, a two-way radio communication, saying that you can't use the gymnasium, you're going to have to teach your activity outside because the gymnasium was unusable?" Ms. Andelin: "If you remember one, tell him about what you remember."  Witness: "I don't remember specifically.").

Further, Plaintiff's counsel improperly coached her client.  <u>See, e.g.,</u> Nov. 15, 2004 Transcript at 56:13-23 (Q: "Getting back to the subject that we were on before we took our break, are there in-service days at Dixie district which a teacher shows up for and is paid for but it's actually before the classroom teaching starts?"  Ms. Andelin: "Do you understand the question?" Witness: "Yes."  Ms. Andelin: "In-service days?" Witness: "Not before the teaching actually starts,

United States District Court

For the Northern District of California

no.  Not early in the morning, if that's what you're asking."); 79:11-21 (Q: "Nonetheless, did you ever see anything in writing from the Miller Creek School or from that district that said, 'Teachers are supposed to create lesson plans,' or words to that effect?"  Witness: "Yes."  Q: "What was that in?"  A: "Personnel handbook."  Ms. Andelin: "If you know, Don't guess.  Do you know?"  Witness: "No.  I don't know."); Feb. 4, 2005 Transcript at 273:19-25 (Q: "This journal, does it cover periods of time before and after Miller Creek or just your experiences at Miller Creek?"  A: "Just my experience at Miller Creek."  Ms. Andelin: "For a particular period of time."  A: "For -- yes, for a particular period of time."); 287:6-9 (A: "My first entry that mentions an attorney is April 23rd."  Ms. Andelin: "Well, I think there's one on April 8, if you want to look at it again."); 420-423:1 (Q: "Ma'am, did Mr. Johnson ever use the words 'summarily terminated' in his discussion with you?"  A: "I don't remember his jargon."  A: "Do you remember any administrator --"  Ms. Andelin: "Do you want to see what you wrote at the time?").  In another blatant example of witness coaching, counsel succeeded in having Plaintiff change her testimony.  See Nov. 15, 2004 Transcript at 228:1-17 (Q: "How did you get along with Dwayne, the other one in the PE department, your second year?"  A: "Dylan?"  Q: "Dylan.  I'm sorry."  A: "I mean, we worked together."  Q: "No offensive interactions?"  A: "No, no offensive."  Ms. Andelin: "You should define what you mean by offensive interactions."  Q: "Well, let the witness define it.  If she thought it was offensive, I want to hear about it."  A: "Nothing offensive that I recall."  Ms. Andelin: "Did they include you in the meetings?"  A: "Well, besides not including me in the meetings in the mornings in the boys' locker room.").

Plaintiff's counsel also made unnecessary editorial comments in response to some questions.  See., e.g., Nov. 15, 2004 Transcript at 172:10-14 (Q: "Do you have a copy of Scott's letter that you referred to?"  A: "No.  I was never given a copy."  Ms. Andelin: "And surprise, surprise, it's not in her personnel file.  What a surprise."); Feb. 4, 2005 Transcript at 399:19-23 (Q: "Do you know whether in doing so, whether Dylan was motivated by concerns regarding student safety?"  A: "I don't know what Dylan's motives were."  Ms. Andelin: "We do know what Mr. Zellers said in his deposition, however.").

On several occasions, Plaintiff's counsel consulted with her client while the deposition was

United States District Court
For the Northern District of California

1   on the record, and in some instances, while a question was pending.  <u>See, e.g.,</u> Nov. 15, 2004

2   Transcript at 82:24-83:2 (Q: "The substitute didn't have one, and that's how the administration

3   found out?"  A: "Yes."  (Attorney-client sotto voce discussion).); 112:24-113:2 (Q: "How many

4   calls like that where the subject was a Friday run that was being changed do you actually remember

5   receiving?" (Attorney-client sotto voce discussion).).  It is improper for an attorney to consult with

6   her client during the deposition unless there is a question of privilege; consultations while a question

7   is pending are particularly inappropriate.  <u>See</u> <u>Armstrong v. Hussman Corp.,</u> 163 F.R.D. 299, 303

8   (E.D. Miss. 1995) ("Attorneys are also prohibited from acting as an intermediary during their

9   client's deposition – from interpreting opposing counsel's questions; having private conferences

10  with their client during a deposition; and conferring with their client about a document presented by

11  the deposing attorney.").

12      In addition, Plaintiff's counsel was unnecessarily argumentative with defense counsel.  <u>See,</u>

13  <u>e.g.,</u> Nov. 15, 2004 Transcript at 144:25-145:4 (Q: "Can you give me any other context which would

14  explain a statement like that from Scott?"  A: "No."  Ms. Andelin: "Why don't you ask Scott Zellers,

15  She doesn't know why he made the statement to her.").  Many times, Plaintiff's counsel improperly

16  interjected statements not in the nature of objections or clarifications in response to defense

17  counsel's questions before Plaintiff has a chance to answer.  <u>See, e.g.,</u> Nov. 15, 2004 Transcript at

18  27:18-21 (Q: "You can't recall whether it was the principal or vice principal?"  Ms. Andelin: "I'm

19  sure it will say on her records."); 138:13-14 (Q: "Did you bring that [diary]?"  Ms. Andelin: "Why

20  would she?").  In a particularly disturbing exchange, it appears from the videotaped deposition that

21  Ms. Andelin coached Plaintiff by pointing to a portion of an exhibit.  <u>See</u> Feb. 4, 2005 Transcript at

22  408:5-21.

23      After reviewing the transcript of the November 2004 deposition, and the transcript and

24  videotape of the February 2005 deposition, the Court concludes that Plaintiff's counsel engaged in

25  unprofessional and unacceptable behavior that unnecessarily and improperly prolonged Plaintiff's

26  deposition.  Contrary to Federal Rule of Civil Procedure 30(d)(1), her interruptions were constant,

27  often lengthy and at times argumentative.  Plaintiff's counsel's behavior is some of the most

28  egregious this Court has seen and may well justify appointing a special master.  However, the Court

4

**United States District Court**
For the Northern District of California

1   will give Plaintiff's counsel one more chance to conform her conduct to professional norms now that

2   she has the benefit of the Court's opinion regarding her misconduct.  The Court expects that counsel

3   will adjust her behavior accordingly.  Therefore, the Court declines to appoint a discovery referee at

4   this time.  If, however, Plaintiff's counsel continues to engage in any conduct that further delays or

5   disrupts Plaintiff's deposition, the Court will appoint a referee at Plaintiff's expense.  Both counsel

6   are reminded that if a dispute arises during Plaintiff's continued deposition, Civil Local Rule 37-1(b)

7   provides a mechanism for obtaining a telephonic conference with the Court to resolve the dispute.

8   Defendant's Motion for a Discovery Referee is denied without prejudice.

9   **Motion for *In Camera* Review**

10          Prior to the February 4, 2005 deposition, Plaintiff produced a copy of her personal journal for

11  the period February 27, 2003 through May 26, 2003, the last few months of her employment with

12  the Dixie School District.  See Smith Decl. In Support of Opposition to Defendant's Motion for *In*

13  *Camera* Review Exh. 1.  The journal contains Plaintiff's day-to-day observations and experiences at

14  the school, and some portions of the journal are redacted based on attorney-client privilege.

15  Defendant's motion for an *in camera* review is directed at discovering these redacted portions.

16          If the redacted portions of the journal reflect memorializations of communications between

17  Plaintiff and her counsel, they are protected by the attorney-client privilege.  See United States v.

18  Martin, 278 F.3d 988, 999 (9th Cir. 2002) (describing the elements of the attorney-client privilege).

19  According to Defendant, however, Plaintiff's deposition testimony indicates that the redacted

20  portions of the journal may not be mere memorializations.  Plaintiff testified that she wrote in this

21  journal while she was working at the middle school and that it only covers her experience at the

22  school for the period between February 27 and May 26, 2003.  See Shupe Decl. In Support of *In*

23  *Camera* Review Exh. C at 273:17-22.  She bought the journal for the sole purpose of recording

24  events at the school.  See id. at 275:11-13.  She testified that the journal was for her personal use and

25  that the entire journal was just a contemporaneous recordation of events that happened to her at the

26  school.  See id. at 277:16-24.  Importantly, Plaintiff testified that during the period of time reflected

27  in the journal, she was not represented by an attorney with respect to any matter related to the

28  middle school.  See id. at 285:17-20.  Her attorney then objected and said, "Oh, yes, you were."  See

United States District Court

For the Northern District of California

1   id. at 285:23.  Plaintiff then testified that she first had an attorney who represented her in connection

2   with this lawsuit as of April 8, 2003.  See id. at 287:1-288:4.

3       In opposition to this motion, Plaintiff stated in her declaration that she consulted a lawyer on

4   April 8, 2003 and that she wrote in her journal on several occasions about her communication with

5   Ms. Andelin.  See Smith Decl. In Support of Opposition to Defendant's Motion for *In Camera*

6   Review ¶ 9.  She stated that the redacted lines "relate our conversations, my understanding of Ms.

7   Andelin's legal advice and legal strategy as well as my motive in seeking representation and the

8   specific nature of the services she provided to me."  See id. ¶ 10.  Ms. Andelin's declaration is in

9   accord.  See Andelin Decl. In Support of Opposition to Defendant's Motion for *In Camera* Review

10  ¶¶ 3-4.

11      Plaintiff's deposition testimony contradicts itself and contradicts her later-filed declaration

12  on the issue of whether she was represented by counsel during the period of time contained in the

13  journal.  If Plaintiff was not represented by counsel during that time, redactions based on the

14  attorney-client privilege are not justifiable.  Defendant has made a showing, unrebutted by Plaintiff

15  who does not address the inconsistency in her testimony, that the information may not be protected

16  by the privilege.  Other than an *in camera* review, there is no way to determine whether the portions

17  are discoverable or whether they are privileged as claimed by Plaintiff and her counsel.  See United

18  States v. Zolin, 491 U.S. 554, 572 (1989) (holding that the party seeking an *in camera* review must

19  make an evidentiary showing that there is a legitimate issue as to the application of the privilege).

20  Although *in camera* review is generally disfavored, the Court grants Defendant's Motion for *In*

21  *Camera* Review of the redacted portions of Plaintiff's journal.  Plaintiff shall lodge an unredacted

22  copy of the journal directly with chambers no later than June 6, 2005.

23  **Motion for Attorneys' Fees and Costs**

24      Defendant seeks an award of fees and costs pursuant to Federal Rule of Civil Procedure

25  37(a)(4) relating to the two discovery motions.  Although the Court denied without prejudice

26  Defendant's Motion for Discovery Referee, the conduct necessitating the motion was so outrageous

27  that the Court awards Defendant its fees under the Court's inherent power.  See Roadway Express v.

28  Piper, 447 U.S. 752, 766 (1980) (holding that courts possess inherent power to impose sanctions for

"willful abuse of judicial processes").  Defense counsel stated that he spent six hours preparing the motion and estimated that he would spend three hours preparing the reply brief, and that his hourly rate is $145.00.  <u>See</u> Shupe Decl. In Support of Motion for Fees at ¶¶ 4,5.  The amount of time expended and the billing rate is reasonable given the work performed.

Defendant incurred the expense of videotaping Plaintiff's February 2005 deposition in an effort to curtail Plaintiff's counsel's misconduct.  Therefore, Defendant is also entitled to recovery of reasonable costs paid for the videotape.  Defendant has not submitted any evidence of this amount, and shall do so no later than June 6, 2005.

Therefore, Defendant's Motion for Fees relating to the Motion for Discovery Referee is granted in the amount of $1,305.00 for attorney's fees.  The Court will issue a separate order awarding reasonable costs for the videotape.

The Court defers decision on Defendant's Motion for Fees relating to the Motion for *In Camera* Review.

**IT IS SO ORDERED.**

Dated: May 27, 2005



ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court

For the Northern District of California

7